UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH D'ANNUNZIO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>Defendant. | Civ. No. 2:11-cv-7576 (KM) (MCA)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court upon cross-motions for summary judgment regarding the interpretation of a group insurance policy ("Policy") issued by defendant United of Omaha Life Insurance Company ("United") to D'Annunzio & Sons, Inc. ("D&S" or "Policyholder"), a close corporation owned by the plaintiff, Joseph D'Annunzio ("D'Annunzio"), and his three brothers. D&S has an employee welfare benefit plan ("Plan") that is funded by the Policy. D'Annunzio, who is disabled, is qualified to and does receive long-term disability ("LTD") benefits under the Plan and the Policy. The Policy, however, requires that LTD benefits be reduced by the amount of certain "Other Income Benefits." The issue presented is this: Do monthly payments made to D'Annunzio under an Income Continuation Agreement constitute "Other

1

Income Benefits," as defined in the Policy, which must be offset against the LTD benefits due to D'Annunzio?

As claim administrator of the Plan, United answered that question in the affirmative and reduced D'Annunzio's LTD benefits accordingly. The Policy grants United the authority to interpret the terms of the Policy. United's decision must be upheld if it is supported by substantial evidence, and it can be overturned only if it was arbitrary and capricious. Having read the Policy and reviewed the administrative record, I hold that no reasonable fact-finder could conclude that United's interpretation was arbitrary and capricious. Defendant's motion for summary judgment is therefore **GRANTED,** and Plaintiff's motion for summary judgment is **DENIED**.

## I. FACTS

D&S is a close corporation owned by Plaintiff and his three brothers. For the benefit of the brothers and other employees, D&S established and maintained an ERISA-governed Plan. That Plan included provision for LTD benefits in the event a participant became disabled. In April 2004, defendant United issued the Policy, which funded the LTD benefits under the Plan. It is undisputed that D'Annunzio was a participant in the Plan and was insured under the Policy.

### A. Applicable Terms of the Policy

Certain relevant provisions of the Policy are set out here:

**LONG-TERM DISABILITY BENEFITS**

<u>Monthly Benefit</u>

If You are Disabled and earning less than 20% of your Pre-Disability Earnings, the Monthly Benefit is the lesser of:

   a) 60% of Your Basic Monthly Earnings, less Other Income Benefits; or
   b) the Maximum Monthly Benefit. The Maximum Monthly Benefit is $6,000, ***less any Other Income Benefits***.

***

Your monthly benefit will never be less than $100.

[Declaration of Molly Kuehl ("Kuehl Dec.") Ex. A, at UNITED-0030 – UNITED-0031 (bold italics emphasis added)]


<u>Other Income Benefits</u>

Other Income Benefits are the following:

1) The amount for which You are eligible under:

   a. a workers' or workmen's compensation law;

***

5) Benefits under a Social Security Plan, as follows:

   a. disability benefits for which You are eligible;

   b. Retirement Benefits You receive or are eligible to receive; or

   c. the following benefits which apply to Your spouse, child or children:

      1. disability benefits for which they are eligible because of Your disability; or

>   2. Retirement Benefits they receive or are eligible to receive because of Your receipt of the Retirement Benefits.

***

>   6) ***Any formal salary continuation***, sick leave benefits, or severance pay for which You are eligible or that You are receiving from the Policyholder.

***

Exceptions

Your Monthly Benefit will not be reduced by the following:

1)   Individual disability income insurance;

***

>   11) ***Any informal salary continuation***, sick leave benefits, or severance pay;

***

[*Id.* at UNITED-0031 – UNITED-0033 (bold italics emphasis added)]


AUTHORITY TO INTERPRET POLICY

By purchasing the policy, the Policyholder grants United of Omaha Life Insurance Company ***the discretion and final authority to construe and interpret the policy.*** This means that ***United has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United.*** In making any decision, United may rely on the accuracy and completeness of any information furnished by the Policyholder or any insured person. ***United's interpretation of the policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.***

[*Id.* at UNITED-0007 (bold italics emphasis added)]

## B. Income Continuation Agreement, Shareholder's Agreement, and D'Annunzio's Claim for LTD Benefits

D'Annunzio held a 25% ownership interest in D&S and was also employed by D&S as a construction manager. On February 8, 2005, D'Annunzio and D&S entered into an Income Continuation Agreement. In that Agreement, D&S agreed to pay D'Annunzio an "income continuation amount" under certain conditions, including any future disability. The Income Continuation Amount was initially set at $2,250,000 (later raised to $2,750,000),[1] payable in 60 equal monthly payments. [Kuehl Dec., Exhibit B, UNITED-0588 – UNITED-0594]. On the same day, February 8, 2005, D'Annunzio and D&S entered into a Shareholder's Agreement which entitled D&S to buy out D'Annunzio's ownership shares at a specified price under certain conditions, including "total disability." [*Id.* at UNITED-0535 – UNITED-0587].

On or about September 30, 2006, D'Annunzio became permanently disabled as a result of work-related accidents, injuries and illness. From September 30, 2006, through December 31, 2007, while on disability leave, D'Annunzio continued to receive his normal compensation as a manager and owner of D&S. The Shareholder's Agreement, however, limited such continued payment of his salary to a maximum of 90 days.

---

[1] By Unanimous Written Consent dated December 21, 2007, D&S and each of its owners agreed to increase the total amount payable under the Income Continuation Agreement from $2,250,000 to $2,750,000. [*Id.* at UNITED-0602 – UNITED-0603].

D'Annunzio was involuntarily terminated in October 2008, after 2 years of total disability. By Memorandum of Understanding dated October 15, 2008, D'Annunzio and D&S agreed that D'Annunzio: (1) was deemed to be totally disabled for purposes of the Shareholder's Agreement and the Income Continuation Agreement; and (2) would receive the Income Continuation Amount of $2,750,000 payable over 60 months commencing (retroactively) as of January 1, 2008.[2] In addition, D'Annunzio (3) would sell his 25% ownership share back to D&S for $5,040,445, payable in accordance with the terms of the Shareholder's Agreement. [*Id.* at UNITED-0595 – UNITED-0600]

From January 1, 2008 through December 31, 2012, D'Annunzio received monthly payments. [*Id.* at UNITED-0624]. D&S treated these as payments under the Income Continuation Agreement. And it treated these payments as ordinary compensation for purposes of federal and state income tax withholding. [*Id.* at UNITED-0609, UNITED-0624, and UNITED-1100 - UNITED-1103].

By letter dated July 9, 2009, D'Annunzio submitted a claim for LTD benefits under the Plan. Upon receipt of D'Annunzio's claim for LTD benefits, United began to compile a Claim File. That Claim File came to constitute the administrative record used by United in making its determination.

---

[2] All payments made to D'Annunzio from January through October 2008 were deemed to be payments pursuant to the Income Continuation Agreement. [*Id.* at UNITED-0595 – UNITED-0600]

6

Initially, by letter dated April 7, 2010, United denied D'Annunzio's LTD claim. That denial letter stated that D'Annunzio had not provided sufficient information about the nature of his disability and the medical treatment he received from September 30, 2006, through June 3, 2007. [*Id.* at UNITED-0054 – UNITED-0059]. D'Annunzio appealed and submitted additional documentation. By letter dated October 14, 2010, United overturned its earlier denial of LTD benefits.

By letter dated January 14, 2011, United granted D'Annunzio's application for LTD benefits, effective as of September 30, 2006. There was, however, a catch. That same letter noted that D'Annunzio had been "receiving salary continuance," *i.e.*, the Income Continuation Agreement payments. Those monthly Income Continuation payments, said United, fell under the Policy's definition of "Other Income Benefits" because they constituted a "formal salary continuation." And, as "Other Income Benefits," they had to be applied as an offset to reduce the amount of LTD benefits. *See* Kuehl Dec., Ex. A, at UNITED-0030, quoted at p. 3, above. As it happened, the monthly Income Continuation payments exceeded (*i.e.*, completely offset) D'Annunzio's maximum monthly LTD benefit of $6,000. Accordingly, United awarded D'Annunzio the minimum monthly LTD benefit of $100.00.

D'Annunzio appealed the offset component of United's decision. He asserted that the payments under his Income Continuation Agreement were not a "formal salary continuation," but rather a retirement benefit. In addition,

7

he argued, they represented partial payment by D&S for its buyback of his 25% ownership interest in the company. Accordingly, D'Annunzio contended, the Income Continuation payments did not constitute "Other Income," and should not be set off against LTD benefits.

By letter dated April 22, 2011, United rejected that appeal and upheld its determination that payments received under the Income Continuation Agreement were "Other Income Benefits" under the Policy. Specifically, the letter explained:

> The basis for this determination is the fact that those payments are clearly being issued under the formal Income Continuation Agreement. This agreement specifically provides income in the event of a disability. As such, it is formal salary continuation pay and would be considered "Other Income Benefits." The Income Continuation Agreement is not a retirement plan, thus the payments issued under this agreement are not retirement benefits. Nor are the payments a refund of his ownership interest in the corporation. The separate shareholders agreement governs the purchase of his stock in the company.

[*Id.* at UNITED-0346 – UNITED-0348].

## II. DISCUSSION
### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment,

8

a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). That "evidentiary burden" is discussed in the following section.

### b. Standard of Review of Claims Administrator's Decision

The ultimate decision before this Court is whether the decision of United, as claims administrator, should be upheld. Before making that determination, this Court must determine the burden that United must meet. I find that my review in this case falls under the deferential "substantial evidence" standard, under which United's decision cannot be reversed unless it is arbitrary and capricious.

Like so many issues involving employer-sponsored plans, the standard of review is dictated by ERISA. D'Annunzio's challenge to the offset of his LTD

benefits must be construed as a claim to recover unpaid benefits pursuant to ERISA § 502(a)(1)(B). Thus *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), for example, held that a suit by a beneficiary to recover benefits under an ERISA-governed plan "falls directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolution of such disputes."

ERISA dictates that the district court's standard of review depends on the authority granted to the claims administrator by the governing welfare benefit plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the governing ERISA plan "gives [its] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," a court must review a denial of benefits under an "arbitrary and capricious" standard. *Id.*

Clearly this is such a case. The Policy grants United "the discretion and final authority to construe and interpret the policy," including the "authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits. . . . United's interpretation of the policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons." (Kuehl Dec. Ex. A, at UNITED-0007) A broader delegation of interpretive authority can hardly be imagined. Under *Firestone,* this Court must review United's decision pursuant to an "arbitrary and capricious" standard.

11

The United States Court of Appeals for the Third Circuit has described such arbitrary-and-capricious review as follows:

> We review a challenge by a participant to a termination of benefits under ERISA § 502(a)(1)(B) under an arbitrary and capricious standard where, as here, the plan grants the administrator discretionary authority to determine eligibility for benefits. An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.

*Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844-455 (3d Cir. 2011) (citations omitted).

"Erroneous as a matter of law" is self-explanatory, but "substantial evidence" is less so. "A decision is supported by 'substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision.' " *Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136, 142 (3d Cir. 2000) (quoting *Daniels v. Anchor Hocking Corp.*, 758 F. Supp. 326, 331 (W.D. Pa. 1991)). In other words, a court reviewing a plan administrator's interpretation of a plan under the arbitrary-and-capricious standard should not disturb the administrator's decision unless it is unreasonable. *Dewitt v. Penn–Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997); *see also Funk v. CIGNA Group Ins.*, 648 F.3d 182, 190 (3d Cir. 2011) (summarizing standard applicable to an ERISA § 502(a)(1)(B) claim). Such review is, of course, highly deferential to the claims administrator's decision.

For purposes of this motion, then, the summary judgment standard is laid atop the standard of review of the United claims administrator's decision. I

must determine whether there is a genuine issue of fact as to whether United's decision was arbitrary and capricious. *See Hatchigian v. Int'l Bhd. of Elec. Workers, Local Union No. 98, Health & Welfare Fund*, 13-1377, 2013 WL 3816101 at *3 (3d Cir. July 24, 2013) (affirming district court's award of summary judgment in favor of ERISA-plan administrator where "there was no genuine issue of material fact with respect to whether [plan administrator] acted in an arbitrary and capricious manner in deciding not to extend" benefits coverage).

If there is substantial uncontested evidence to support the claims administrator's decision, it must be upheld, even if other evidence might support a competing interpretation. A claims administrator which demonstrates that its decision is supported by substantial evidence is entitled to judgment as a matter of law.

### c. Discussion

United, as claims administrator, determined that monthly payments received under the Income Continuation Agreement were "Other Income Benefits" under the policy, and therefore had to be set off against monthly LTD benefits. That decision, far from being arbitrary and capricious, was reasonably based on the plain language of the Policy. I will uphold it, and grant United's motion for summary judgment.

Under the terms of the Policy, United had the "discretion and final authority to construe and interpret" its provisions and decide "all questions regarding the amount and payment" of any benefits. Kuehl Dec., Ex. A, at UNITED-0007, quoted above at p. 4. Following its established procedures, United compiled a Claim File and evaluated all information provided by D'Annunzio in support of his claim for benefits. It measured this information against the terms of the Policy in arriving at its conclusion.

The Policy defines certain "Other Income Benefits" that are to be set off against LTD Monthly Benefits. One of these is "Any formal salary continuation." *Id.* at UNITED-0033, quoted above at p. 4. United determined that payments under the Income Continuation Agreement met the definition of a "formal salary continuation." That determination was based on substantial evidence in the administrative claim file.

That evidence included, of course, the provisions of the Policy itself, quoted above. It also included the Income Continuation Agreement. That Agreement, as its title implies, provides for the employee to continue receiving compensation despite his inability to work as the result of, for example, a disability. The claim file also contained all the documents submitted to United by or on behalf of D'Annunzio, and correspondence and communications between and among D'Annunzio, his attorney, and representatives of United concerning his claim. Additionally, the claim file included medical and other

information that was received and reviewed by United, and other information developed during the course of United's evaluation of D'Annunzio's claim.

United even referred D'Annunzio's file to a forensic accountant in order to analyze the status of the payments D'Annunzio received with respect to the provisions of the Policy. "The forensic accountant opined that . . . the wages Mr. D'Annunzio receives must be considered part of a formal salary continuation plain if D'Annunzio and Sons, Inc. deducts these wages as a business expense." Kuehl Dec., Ex. B, UNITED-0612. The evidence is uncontested that, for tax purposes, D&S did treat payments under the Income Continuation Agreement as ordinary wages; for example, it withheld federal and state income taxes. By any measure, this evidence in the administrative record constitutes substantial evidence to support United's conclusion that the Income Continuation Agreement was a "formal salary continuation," and hence that it constituted "Other Income" under the policy.

D'Annunzio disagrees with United's interpretation. He asserts that the Income Continuation Agreement is more properly viewed as one of three things: (1) A retirement benefit; (2) a deferred compensation agreement; or, especially, (3) partial payment for D'Annunzio's sale of his ownership interest back to the company. Suffice it to say that there is not much evidence that any party ever so characterized the Agreement before this dispute arose. But even if one of these alternative interpretations were reasonable, it would not follow that United's interpretation was so arbitrary and capricious that the Court could

15

reject it. Under the applicable standard, such arguments are not sufficient to defeat summary judgment when there is substantial evidence to support the alternative that the claims administrator did adopt.

D'Annunzio argues in the alternative that the Court should remand this matter to the plan administrator for reconsideration. Meeting notes compiled by a financial planner for the D'Annunzio brothers in 2003 and 2004 have apparently just come to light. This "new evidence," D'Annunzio says, shows that the Income Continuation Agreement was intended to be a "vehicle" for paying each of the owners a portion of his equity interest in the business when he died, retired, or became disabled. There are at least two problems with this argument.

First, D'Annunzio made this exact argument to United during the processing of his claim. Because the newly discovered meeting notes would be largely cumulative, a remand would not be appropriate.

Second, this argument fails as a matter of law. D'Annunzio essentially concedes that the payments were structured as Income Continuation, but nevertheless asks the Court to disregard that reality in favor of the payments' underlying "reason or purpose." That "purpose," says D'Annunzio, was to pay him for his interest in the company. For tax reasons it was advantageous to structure the payments so the IRS would treat them as ordinary income. Having done so, and having enjoyed the tax benefit, D'Annunzio argues that

the Court should now treat the payments as something -- anything -- other than income. Even if I were writing on a blank slate, I would not find this position very persuasive. And under the arbitrary and capricious standard I would have to find, in effect, that the claims administrator was *compelled* to accept this flimsy argument. That I cannot do. There is no dispute that there existed substantial evidence to support United's decision as claims administrator.

### III. CONCLUSION

For the foregoing reasons, United's motion for summary judgment is **GRANTED**. D'Annunzio's motion for summary judgment, his alternative motion to remand, and his request for attorney's fees are **DENIED**. An appropriate order will be filed.

_____
**KEVIN MCNULTY, U.S.D.J.**

Dated: July 30, 2013